## NATIONAL CITY BANK v GUARDIAN TRUST CO et

Ohio Common Pleas, Cuyahoga Co

Decided Nov 14, 1938

By POWELL, J.

This case is one of one hundred and twenty cases now pending in this court involving, for all practical purposes the same questions of law. To all of the petitions so filed the defendant, the superintendent of banks has filed demurrers. Sixty-eight

of these petitions have been filed by the National City Bank of Cleveland as successor trustee. The allegations of these petitions being substantially identical, the parties have selected the instant case with the approval of the court for a ruling which shall be equally applicable to the other cases above referred to.

Plaintiff brings its action as successor trustee against the Guardian Trust Company and the superintendent of banks in charge of the liquidation of the Guardian Trust Company for an accounting and general equitable relief for acts detrimental to said trust estate alleged to have been committed by the Guardian Trust Company prior to the taking of possession by the superintendent of banks.

After making the necessary inducement allegations, the petition alleges in part:

"Losses have been caused by said trust by breaches of trust committed by said trust company during its trusteeship, the extent of which plaintiff does not know, said breaches consisting, among other things, of the following practices:

"1. Acting in trust affairs, so as to bring its private interests into antagonism or possible conflict with its trust duties,

"2. Dealing, as trustee of said trust, with itself in its private capacity and/or in the capacity of trustee of other trusts of which it was trustee,

"3. Making secret personal profit out of its dealings with said trust,

"4. Buying for said trust, its own private property or securities whose sale it had a private interest in promoting, and

"5. Failing to dispose of investments of which it had a duty to dispose.

"No restitution has been made for said losses."

The petition further alleges:

"Information concerning said trust company's administration of said trust and the existence of the aforesaid breaches of trust and practices of said trust company is contained in the papers, documents and records of said trust company which came into the possession and control of said superintendent, when said superintendent took possession of said trust company for liquidation and have ever since been in said superintendent's possession and control."

Plaintiff further alleges:

"On or about May 10, 1937, plaintiff, as successor trustee, served a written demand upon the defendants, that they render to plaintiff, as successor trustee, an accounting of the administration of said trust by said trust company, and disclose to plaintiff, as successor trustee, the instances wherein the aforementioned practices and breaches of trust affected said trust company's administration of said trust. At the same time, plaintiff, as successor trustee, served a written demand upon said superintendent that said superintendent render to plaintiff, as successor trustee, an accounting of the custody, care and administration of said trust estate by said superintendent following the entry of said trust company into liquidation, and that he restore to plaintiff in full, all sums of money taken, subsequent to June 15, 1933, by said superintendent, from said trust assets, for compensation. Said demands were refused on or about May 13, 1937. Plaintiff has no adequate remedy at law. Plaintiff herewith offers to do equity."

By its prayer, consisting of nearly three pages, plaintiff seeks an order requiring the superintendent of banks to give a complete and detailed accounting of all transactions of said trust company which may have any relation to said trust.

Based upon said alleged breaches of trust, plaintiff asks for its ultimate relief that the claims arising out of the breaches of trust of the Guardian Trust Company be determined and that judgment be rendered in its favor for the amount so found, and that the judgment be decreed to be a valid general claim against the assets of the Guardian Trust Company in the hands of the superintendent of banks.

Plaintiff further asks for a lien against the assets of the trust as security for the losses sustained. In brief, the ultimate relief sought by plaintiff is to impose a claim against the assets of the Guardian Trust Company.

The demurrer challenges the sufficiency of the allegations of the petition to state a cause of action against the defendant, the superintendent of banks. Two grounds are urged in support of the demurrer, to-wit:

1. That the filing of a claim, the making of legal proof thereof and its rejection by the superintendent of banks is a condition precedent to the jurisdiction of the Common Pleas Court.

2. That the Common Pleas Court does not have jurisdiction to compel the superintendent of banks to account for the acts of the Guardian Trust Company while it was acting as trustee.

It is the contention of plaintiff that under the provisions of §710-95, GC, which plaintiff designates the "equitable method," there is no necessity for the filing of a claim; that this section does give the court jurisdiction over the superintendent of banks, and further, that the court under its equitable power has authority to compel the superintendent of banks to give an accounting such as is sought in the petition.

In a number of cases submitted plaintiff concedes the necessity of the filing of a claim as provided by the statute, contending that the allegations in the petition meet the statutory requirements.

All of the various issues and claims will be determined in this memorandum.

Voluminous briefs have been filed, citing many authorities from other jurisdictions. It appears to the court that answers to the questions involved may be found in the statutory law and decisions of Ohio.

Are the remedies and procedure provided by §§710-1 to 714, GC, sometimes known as the Ohio Banking Act, exclusive?

See State ex Grisell v Marlow, 15 Oh St 114 Syl.

"A specific mode of contesting elections in this state, having been provided by statute, according to the requirement of the constitution, that mode alone can be resorted to, in exclusion of the common law mode of inquiry by proceedings in quo warranto. The statute which gives this special remedy, and prescribes the mode of its exercise, binds the state as well as individuals."

The court stated, at the bottom of page 134:

"And it is a settled rule that 'where a new right, or the means of acquiring it, is conferred, and an adequate remedy for its invasion is given by the same statute, parties injured are confined to the statutory redress.' * * *

"The rule is equally applicable, upon principle, that where the statute which confers the means of acquiring a right prescribes an adequate special mode of determining by judicial investigation the fact upon which the right depends, that mode must be exclusive."

See State ex John Gerke v The Board of Commissioners of Hamilton County, 26 Oh St 364, Syl.:

"3. Where a claim against the county is founded exclusively on a statute, which provides for its allowance by the County Commissioners, the remedy prescribed by the statute must be pursued."

In 58 Oh St 313, State ex Atty. Gen. v Ganson, the court held, Syl.:

"2. Where the causes of removal from office are prescribed by statute which also provides a special mode of procedure for such removal, the statutory remedy is the exclusive one, and quo warranto will not lie."

In Thatcher v The P. O. & D. Rd. Co., 121 Oh St 205, at page 209, Chief Justice Marshall states:

"The Probate Court is a court of record, and is clothed, by statute with ample jurisdiction, and complete procedure is provided. The procedure must, of course, be followed, and, if timely objection is made, a failure to follow the prescribed procedure would be erroneous."

"The Legislature may provide a remedy where none exists at common law or prescribe a remedy to enforce a new right or a new remedy to enforce an old right; and such a statute must be strictly complied with as to the extent and manner of procedure." 1 C. J. S., page 973.

"A statutory remedy to enforce a new right or liability created by the same statute is exclusive unless the statute clearly shows a contrary intention." 1 C. J. S. page 974.

"Where a proceeding is established by statute which differs radically from that of the common law, it must be strictly pursued." 25 R.C.L. page 1057, paragraph 282.

Did the Legislature, by the enactment of the Ohio Banking Act, provide a specific, adequate, exclusive and constitutional method for the dissolution of insolvent banks and the liquidation of their assets?

Does the method of procedure prescribed by said act for the bank's dissolution and liquidation conserve and secure an equitable distribution of the assets of such bank to those entitled thereto?

In State ex Squire etc. v Steck et, 132 Oh St 198, 7 O.O. 349, the Supreme Court in the first syllabus states the object of the Ohio Banking Act, as follows:

"One of the principal objects of the Ohio Banking Act (§§710-1 to 714, GC) is to pro-

vide for the complete liquidation of all types of banks enumerated therein, upon insolvency under the exclusive supervision and control of the superintendent of banks."

Sec 710-90, GC, (2) requires the superintendent of banks to give public notice "calling on all persons who have claims against such bank to present the same to him, and make legal proof thereof at a place and within a time not later than the last day therein specified."

Sec 710-92, GC. Rejection of claims; limitation of actions:
"If the superintendent of banks doubts the justice or validity of any claim, he may reject the same in whole or in part, or reject any claim of security preference or priority, or offset, and shall serve written notice of such rejection upon the claimant, either personally or by registered mail. * * * "Any person, partnership, corporation, or association who shall deem himself or itself aggrieved by the rejection of his or its claim in whole or in part, or the rejection of any claim of security preference or priority, or set-off, by the superintendent, shall bring an action against the superintendent of banks, and such bank, within three months after such rejection or refusal of allowance, or be forever barred from asserting the same."

Sec 710-93, GC makes provision for inventory of assets and liabilities, lists of claims and filing of the same, permanent records of liquidation and final distribution.
Sec 710-95, GC, specifically defines the powers and duties of the superintendent upon taking possession of a bank. Part of said section provides, as follows:

"He shall not be directed or restrained in the exercise of his powers or discretion otherwise than in a suit in equity in which it shall be alleged and proved that he has exceeded or abused such powers and discretion."

Sec 710-98, GC, provides for payment of dividends.
Sec 710-98 (a), GC, makes provisions for allowance of claims of preference.
In the case of Slocum v Mutual Building & Investment Co. et, 130 Oh St 312, 4 O.O. 350, the court considered §§687 to 687-24, GC, both inclusive, with respect to the liquidation of building and loan companies, which sections are in many respects identical to §§710-1 to 714, GC. The court defi-

nitely held that, by the enactment of §§687 to 687-24, GC, the Legislature had provided for a specific and exclusive method of procedure for the dissolution of building and loan companies and the liquidation of their assets. The syllabus reads as follows:

"1. By the enactment of §§687 to 687-24, GC, the state has exercised its power to preempt the field in providing a specific, adequate, exclusive and constitutional method of procedure for the dissolution of building and loan associations and the liquidation of their assets. * * *.
"2. The provisions of that act limit the statutory jurisdiction of the Common Pleas Court and apply to all such cases pending therein on the date the act became effective, as well as to such actions filed subsequently thereto."

The word "claims" in §§710-90 and 710-92, GC should be defined in the light of the scope and purpose of those sections. Webster's New International Dictionary defines "claims":

"A calling on another for something due or supposed to be due",

And defines "legal" as:
"In conformity with, or permitted by, law; lawful."

Defines "proof", as
"That degree of cogency, arising from evidence, which convinces the mind of any truth or fact and produces belief; also, that which proves or tends to prove * * *. **Properly speaking, proof is the effect or result of evidence; evidence is the medium of proof.**"

It is obvious that it was the intention of the Legislature to require any person, partnership, corporation or association claiming the right to participate in the distribution of the bank's assets to present a claim with sufficient facts to enable the superintendent of banks intelligently to form an opinion as to whether the claimant has, or has not, a claim against the bank. It is our conclusion that the allegations of the petition do not meet the requirement of the statutes as to the filing of claims and legal proof thereof.
Does the Common Pleas Court have jurisdiction to compel the superintendent of banks to account for the acts of the Guard-

ian Trust Company while said trust company was acting as trustee?

The duties of the superintendent of banks, when he takes over a bank for liquidation, are those of liquidation only. The superintendent does not become the successor bank, nor is he the successor trustee. He has no authority to administer an estate for an insolvent trust company. In Re Estate Carrie Baldwin (Probate Court of Cuyahoga County) 1 O.O. 252 (affirmed by the Common Pleas Court and Court of Appeals); Snyder, Exrx. v Fulton, Supt. of Banks, 44 Oh Ap 238; Farkas v Fulton, Supt. of Banks, 130 Oh St. 390, 4 O.O. 523.

In our opinion, it is clear from the foregoing authorities that under the Ohio Banking Act the superintendent of banks, in no sense, bears a fiduciary relationship to any of the parties.

It is well settled in Ohio that a right to an accounting in equity depends upon a fiduciary relationship between the parties relative to the matters or transactions to be accounted for. 1 Ohio Jur., pages 203 to 205; Willson Improvement Co. v Malone, 78 Oh St 232; Complete Building Show Co. v Albertson, 99 Oh St 11; Chapman v Lee, 45 Oh St 356; Fitzgerald v Cleveland Cadillac Company, 17 Oh Ap 12; Squire v Guardian Trust Co. et, 25 Abs 408.

Has the superintendent of banks exceeded or abused his powers and discretion?

The powers and duties of the superintendent of banks are fully and specifically defined by the applicable sections of the General Code of Ohio familiarly termed the Ohio Banking Act. It has been frequently held by the courts of Ohio that the superintendent has only such powers and duties as are granted or limited by the statutes.

While it is part of his duties to file an inventory of assets and a record of liabilities and to make a report of all receipts and disbursements, there is not a word in the statutes requiring the superintendent of banks to account for the conduct of another person, firm or corporation.

It was the evident intention of the Legislature in enacting §710-95, GC to make provision for the protection of creditors of a bank in liquidation from arbitrary and unreasonable acts of the superintendent of banks. This section confers no additional powers or duties upon the superintendent. It confers no rights upon creditors other than to appeal to the Common Pleas Court for protection of their rights from arbitrary, unreasonable or capricious acts of the superintendent of banks in the liquidation and distribution of the assets of the bank by invoking the equitable power of the court to compel the superintendent to do something which he should do or to restrain him from doing something which he should not do. So long as the superintendent stays within the power conferred upon him he is beyond judicial control. State ex Squire v National City Bank, 56 Oh Ap 401, 7 O.O. 396, Myers v State ex Squire, 58 Oh Ap 386, 11 O.O. 398.

The decision of the Supreme Court in State ex Duffy v Common Pleas Court of Cuyahoga County, 133 Oh St 277, 10 O.O. 351, sometimes referred to as the Spira case, is based upon the statutory (§8623-63, GC) right of a stockholder to examine the books.

The petition discloses that the matter of which complaint is made took place prior to the taking over of the bank for liquidation by the superintendent of banks. It is evident the superintendent has no personal knowledge of the matters alleged in the petition as to the wrongful conduct of the Guardian Trust Company. His only information would be that which might be gained from an extensive audit of all of the transactions of which complaint is made. This source of information is equally available to plaintiff under the Spira decision. §§11551 to 11554, GC, both inclusive, provide additional remedies to obtain this information.

It is the duty of the superintendent of banks to conserve the assets of the bank in liquidation for the benefit of all the creditors. He has no authority to use the bank's assets in financing the litigation of any particular party. The difficulties which the plaintiff has to meet to make its case are no different than many other plaintiffs who have complied with the statutory requirements.

The court takes judicial notice that to grant plaintiff's prayer would subject the superintendent in liquidating said bank to an erroneous expense in making a detailed audit and breaking down of the various items involved. In the one hundred and twenty cases now before the court for determination, the cost, at a reasonable estimate, would exceed one hundred thousand dollars. This would be dissipating the assets of the bank without any warrant of law. While no litigant should be deprived of his rights on account of the cost of litigation, it may be considered in determining whether or not the Legislature,

having enacted a full and complete, adequate and exclusive method for the liquidation of insolvent banks and provided a remedy for all entitled to participate in the distribution of their assets, intended to open the door for the dissipation of those assets by the enactment of §710-95, GC.

Based upon the foregoing the court finds:

1. By the enactment of §§710-1 to 714, GC, known as the Ohio Banking Act, the state has exercised its power to preempt the field in providing a specific, adequate, exclusive and constitutional method of procedure for the dissolution of banks and the liquidation of their assets.

2. The filing of a proof of claim and the rejection thereof by the superintendent of banks is a condition precedent to the jurisdiction of the Common Pleas Court.

3. The allegations of the petition do not meet the statutory requirement as to filing proof of claim with the superintendent of banks by the plaintiff and that the claim was rejected.

4. The Common Pleas Court does not have jurisdiction to compel the superintendent of banks to account for the acts of the Guardian Trust Company while said company was acting as trustee.

The demurrer is sustained. Exceptions. In the instant case the entry will be:

"Demurrer sustained; exception. Plaintiff not desiring to further plead, judgment is rendered for defendants for costs. Exception."

In each of the other cases, the entry will be:

"Demurrer sustained; exception. Plaintiff is given indefinite leave to plead. All proceedings stayed until further order."

This entry will preserve the rights of all parties by keeping all the related cases in status quo until final disposition of this case in the reviewing courts without placing the burden on counsel of obtaining and filing various leaves to plead.